### R. B. DAVIS CO. v. DAVIS.
#### No. 7350.

District Court, E. D. New York.
Nov. 20, 1934.

906

Nims & Verdi, of New York City (Harry D. Nims, Marion L. Severn, and Stewart W. Richards, all of New York City, of counsel), for plaintiff.

Russell, Shevlin & Russell, of New York City (Franklin F. Russell and Matthew J. Shevlin, both of New York City, of counsel), for defendant.

BYERS, District Judge.

Motion for preliminary injunction in a trade-mark infringement and unfair competition case.

The pleadings and motion papers have been examined and yield the following:

The plaintiff is a New Jersey corporation which has been engaged in the manufacture and sale of baking powder for nearly thirty years. Its principal product is "Davis Baking Powder" which has been on the market under a red label since 1886. The lettering of the quoted words is in white and the margins of the label are yellow. The early version of the label was similar in general appearance to that now employed.

The business was founded by Robert B. Davis in 1878, and he caused it to be incorporated in 1905, and became the president.

The average distribution of this product during the past five years is upwards of 16,-000,000 cans per year, during which period advertising expenditures have come to nearly $1,000,000.00.

The article finds its way into consumption through some 9,000 retail grocery stores as to the Metropolitan district and Long Island.

That the plaintiff's product is well established and identified in the public mind under the appellation "Davis Baking Powder" is too clear to admit of serious question.

The defendant is an individual doing business under the style "Julius J. Davis Baking Powder Co., Brooklyn, N. Y.," and relies upon the abstraction that he has the right to make and sell baking powder under his own name, and if he inflicts damage upon the plaintiff's business, that is a consequence for which the plaintiff can have no legal redress.

The defendant is fortified by a trade-mark registration in the Patent Office, but a copy thereof has not been supplied to the court.

How far the case may involve infringement of the plaintiff's several registrations in the same office of "Davis Baking Powder," "Davis'" and "Davis" is not presented on this motion.

The use by the defendant of his own surname in this particular line of activity should be protected by the court, if it appears to have been employed in good faith, and in such a way as to fairly indicate an honest purpose not to acquire the fruits of another's enterprise, i. e., not to engage in unfair competition. Such a principle is to be discerned from Royal Baking Powder Co. v. Royal (C. C. A.) 122 F. 337; De Nobili Cigar Co. v. Nobile Cigar Co. (C. C. A.) 56 F.(2d) 324; Vick Medicine Co. v. Vick Chemical Co. (C. C. A.) 11 F.(2d) 33, and sundry of the cases discussed in those opinions.

This defendant is forty-three years of age, and is a bookkeeper and accountant, and also sells various forms of insurance, at 176 Stagg street, Brooklyn, which premises contain a glass show-window proclaiming in large letters the various forms of insurance to be obtained within; there also appears on the window, in large letters, the legend "Public Accountant". A photograph of this store front shows that the entrance door bears what appears to be a cardboard sign bearing, in much smaller letters than anything on the window, the words "Davis Baking Powder Co." It is said that the sign was augmented by the insertion in pencil of the words "Julius J." after the photograph was taken.

The defendant embarked upon this enterprise in May or June of 1933, when he was a person forty-two years of age, without previous knowledge of or connection with the baking powder business.

He associated himself with one Sol Caplan, who prepared the first formula and assisted the defendant generally in the preparation of the product to which the defendant thus gave the sanction of his name. As it was Caplan's creation, one might expect that the actual paternity would have been asserted, had there been present in the minds of the parties a purpose to proclaim the truth.

The product was prepared in the defendant's place of transacting his insurance business, and advertised in certain foreign language publications, and efforts were made to build up a distribution in stores catering to housewives who would see the advertising. Some success has attended those efforts.

In August of 1933, the plaintiff caused its attorneys to notify the defendant that his use of the name "Davis" for the baking powder he was selling was deemed to be in violation of the plaintiff's rights and, unless discontinued, steps would be taken to protect the plaintiff's trade-mark rights in the name. This led to an interchange of lawyers' letters, but suit was not begun until one year later. It is thought that, under all the circumstances shown, the bill was timely filed.

The defendant is doing business as "Julius J. Davis Baking Powder Co.," but whether this is a registered trade-name is not made to appear.

So far as the papers disclose, the inclusion of the abbreviation for the word "Company" in the defendant's trade designation is without justification.

The label employed by the defendant is red, of a slightly lighter shade than that of the plaintiff, and it contains prominently in white letters on a blue field the word "Rising" which is not a startling innovation in connection with this class of products.

If the labels are compared, particularly by literate persons, they can be distinguished without great difficulty, but, if one were not to see them side by side, the defendant's label could easily be mistaken for the plaintiff's by a purchaser who might retain only a memory of the latter.

The major legend on the defendant's front label is "Davis Rising Powder," with the words "Julius J." in less conspicuous type than the word "Davis" appearing above the latter, and the words "For Baking" under the word "Powder" in letters about half the size of the latter.

All such lettering is in white except the words "Manufactured by Julius J. Davis Baking Powder Co. Brooklyn New York," which are in black, of legible size.

The impression to be gathered is that the defendant is seeking to capitalize the plaintiff's efforts by lending his name, and a false assertion that there is a Davis Company doing it, to Mr. Caplan's ventures in the baking powder field, and that he has gone as far as he deems it expedient, to market these wares under a label that might easily be mistaken for the plaintiff's.

The affidavits tending to show confusion, and the not infrequent statements by dealers that the plaintiff's product and the defendant's are the same, have not been overlooked. In the main, they tend to sustain the plaintiff's cause.

If it were believed that the defendant is engaged in an honest effort to build up a business in a field for which he is equipped by training or experience, the court would be loath to interfere by temporary injunction, but would leave it to the court at final hearing to adjust the equities of the case. That belief cannot be held in the absence of any showing of good faith on the defendant's part.

The defendant should be enjoined pendente lite from using in connection with the advertising, sale, or offering for sale, of any product not that of the plaintiff, the words "Davis," "Davis Baking Powder," "Davis Rising Powder for Baking," "Original Davis," "Originator of Davis," or any other word or combination of words confusingly similar to plaintiff's name, or the words "Julius J. Davis" or "J. J. Davis," except as the distributor of Caplan's baking powder; or the label shown on Exhibit "B" of the plaintiff's bill, or any label confusingly similar to plaintiff's label shown on Exhibit "A" of the plaintiff's bill.

If the parties cannot agree upon the amount of the bond to be filed by the plaintiff, the same will be fixed by the Court upon the entry of the order hereon.

Settle order on 3 days' notice.