AMERICAN TRADING CO. *v.* H. E. HEACOCK CO.*

No. 506. Argued February 26, 1932.—Decided March 21, 1932.

* Together with No. 507, *Wm. A. Rogers, Ltd., et al.* v. *H. E. Heacock Co.*

*Mr. Harry D. Nims,* with whom *Messrs. William Cattron Rigby, Minturn de S. Verdi,* and *James J. Kennedy* were on the brief, for petitioners.

250

*Mr. Edward S. Rogers,* with whom *Messrs. John P. Bartlett* and *Richard Eyre* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

In No. 506, H. E. Heacock Co., a corporation of the Philippine Islands and a dealer in ' flatware,' brought suit in the Court of First Instance of Manila against the American Trading Company, also a local corporation, to enjoin infringement of trade-mark and unfair competition. The trade-mark was the name " Rogers " which it was alleged, had been used by plaintiff for upwards of twenty years on flatware, whether nickel, silver-plated or silver, imported by plaintiff and sold in the Islands. In the year 1918, this trade-mark was registered under the Philippine Act No. 666 of March 6, 1903, as amended, in the local Bureau of Commerce and Industry. The complaint charged that defendant, about the year 1925, began to import and sell within the Philippine Islands flatware of precisely the same designs, as that imported and sold by plaintiff, with the words " Wm. A. Rogers " stamped on the ware in the same position as that which plaintiff utilized, and that through this imitation plaintiff was being defrauded of its legitimate trade. The answer denied the allegations of unfair dealing, and alleged that plaintiff had no legal right to appropriate the name " Rogers " and that, as against defendant, the registration of that name was invalid. The answer further averred that the defendant was acting in the Philippine Islands as the local representative of Wm. A. Rogers, Ltd., (a Canadian corporation doing business in Canada and New York) which was engaged in the manufacture of flatware and had duly registered in the United States, and was

using in its business, several trade-marks embracing the name " Wm. A. Rogers " and " Rogers " in various forms. No. 507 is a cross suit instituted by Wm. A. Rogers, Ltd. and the American Trading Company against H. E. Heacock Co.

The two suits were tried together. Judgment was rendered in favor of H. E. Heacock Co., ordering an accounting of profits and directing that Wm. A. Rogers, Ltd. and the American Trading Company " perpetually abstain from importing and selling in the Philippine Islands silver-plated wares for use in the table and for other purposes similar to those imported and sold by the plaintiff, bearing the trade-mark ' Rogers'." The cross suit was dismissed. The Supreme Court of the Philippine Islands rendered judgments of affirmance, and this Court granted writs of certiorari. Act of February 13, 1925, c. 229, § 7, 43 Stat. 936, 940.

The facts as found by the insular courts, and as set forth in the opinion of the Supreme Court, may be summarized as follows: About seventy years ago, three brothers by the name of Rogers, composing a firm in Connecticut under the name of " Rogers Bros.," were the first to apply the art of electroplating to the manufacture of silver-plated ware in the United States. Their ware soon acquired a high reputation. In 1865, Wm. Rogers, one of the brothers, organized a corporation known as the Wm. Rogers Manufacturing Company which used on its silver-plated ware the trade-marks " 1865 Wm. Rogers Mfg. Co." and " Wm. Rogers & Son." Two other corporations also acquired from one or more of the brothers the right to the use of the name Rogers, and the wares of these concerns were known by the public as " Rogers." In 1898, the International Silver Company was organized and became the owner of the capital stock or properties of a number of corporations, including the Wm. Rogers Manufacturing Company, the Meriden Britannia Com-

254

pany, and Rogers & Bro. (which were engaged in making silver-plated ware) together with their good will and trade-marks embracing the marks " 1847 Rogers Bros." and the "(Star) Rogers & Bro."

The plaintiff H. E. Heacock Co. was established in Manila in 1909 as successor of the firm of Heacock & Frier, which since 1901 had been importing into the Philippine Islands flatware bearing the mark " Rogers." The Heacock Company continued this trade and its goods bearing that mark became widely known in the Islands. These wares were manufactured in the United States by the International Silver Company, and, in 1918, the Heacock Company, with the knowledge and consent of the International Silver Company, registered the word " Rogers " as a trade-mark in the Philippine Bureau of Commerce and Industry. The only competitor of the Heacock Company in this trade is the defendant American Trading Company, which began to import its wares into the Philippine Islands in 1925. These are manufactured in the United States by Wm. A. Rogers, Ltd., which has its trademarks, as alleged by it, duly registered in the United States. They were not registered in the Philippine Islands until after the trial of these suits. As to the similarity of the wares and the effect of the use of the word 'Rogers', the Supreme Court found that " when Heacock Company first imported such wares into the Philippine Islands it was then a virgin country, and it must be admitted that any business standing or reputation which such wares had up to 1925 were those given by the advertising and business methods and dealings of that company. The evidence is conclusive that the wares for which the American Trading Company has been taking and filling orders are very similar in appearance, design, and material to the wares which have been advertised and sold in this country by Heacock Company since 1905. It is true that a dealer in such wares could

and would see the distinction between them, but even so, in the ordinary course of business, the average public to whom they are sold could not and would not distinguish one from the other." And further, the Supreme Court said, "stripped of all non-essentials, it must be conceded that in this line of wares it is the word ' Rogers ' which gives the business its intrinsic value." [1]

---

[1] The Supreme Court in substance confirmed the findings of the Court of First Instance which stated " that the silver-plated goods for use in the table and for other purposes manufactured by the International Silver Corporation and imported into the Islands by H. E. Heacock Co. were known generally and in the Islands by their trade-mark ' ROGERS ' and this trade-mark used in connection with said silver-plated goods have been known by the public as goods sold by H. E. Heacock Co.; that the said silver-plated goods with the trade-mark ' ROGERS ' were notoriously known in the Philippine Islands due to the extensive propaganda and advertisement made by H. E. Heacock Co. which cost from forty thousand to fifty thousand pesos; that the silver-plated goods for use in the table and for other purposes imported into these Islands by H. E. Heacock Co. and by Wm. A. Rogers, Ltd., and the American Trading Co., have the word ' ROGERS ' with the addition of other words, figures or symbols indicating the different grades or qualities of the goods; that in the local market the word ' ROGERS ' is the one generally known and sought for by the public which desires to buy silver-plated goods for the table and for other purposes, disregarding and overlooking completely the other words, figures and symbols appearing on the goods; that some of the dealers in silver-plated goods imported by Wm. Rogers, Ltd., and the American Trading Co. only make mention and call attention to the word ' ROGERS ' appearing thereon, and in almost all cases the public entertained the conviction and the belief, at least, that such silver-plated goods were the same as those which bore the trade-mark ' ROGERS ' sold by H. E. Heacock Co.; that the American Trading Co., through it and as representative of Wm. A. Rogers, Ltd., has succeeded in making a name in the market for the silver-plated goods which it imports and sells in the Philippines, thanks to the word ' ROGERS ' engraved thereon, and, finally, that H. E. Heacock Co. was informed of the importation of these silver-plated goods bearing the word ' ROGERS ' by the American Trading Co. about the end of 1927 only."

No ground appears for disturbing these findings of fact. The petitioners contend that, irrespective of the validity of respondent's local registration, the petitioner Wm. A. Rogers, Ltd. ' was entitled to send its goods marked with its federally registered trade-marks to the Islands and sell them there '; that the respondent's registration in the Islands was invalid upon various grounds; and that both that registration, and the trade-mark registered, in reality belong to the International Silver Company, which is equitably estopped from claiming exclusive rights in the word ' Rogers '. Respondent rests upon the Philippine statute and its registration thereunder, and upon general principles of law, insisting that the registration by Wm. A. Rogers, Ltd., of its trade-marks in the United States does not constitute a defense against infringement and unfair competition in the local trade in the Islands.

*First.* While the Congress, by virtue of the commerce clause, has no power to legislate upon the substantive law of trade-marks,[2] it does have complete authority so to legislate, or to provide for such legislation, in the government of the Philippine Islands.[3] Under the authority validly conferred by the Congress,[4] the Philippine Commission passed the Philippine Act No. 666, of 1903, which made comprehensive provision in relation to trade-marks, trade names and unfair competition in the Philippine Islands. That Act, with amendments, has been continued. It provides for the registration of trade-marks and their protection. The Congress has had authority to amend or repeal this legislation, relating to local trade within the

---

[2] *Trade-Mark Cases,* 100 U. S. 82; *United Drug Co.* v. *Rectanus Co.,* 248 U. S. 90, 98; *American Steel Foundries* v. *Robertson,* 269 U. S. 372, 381.

[3] *De Lima* v. *Bidwell,* 182 U. S. 1, 196, 197.

[4] Act of March 2, 1901, c. 803, 31 Stat. 910; *Dorr* v. *United States,* 195 U. S. 138, 153; *United States* v. *Heinszen & Co.,* 206 U. S. 370, 385.

Islands, but it has not done so. The Federal Trade-Mark Act of 1905,[5] cannot be regarded as intended to displace the Philippine statute so far as the latter applied to local commerce. The Act contains no provision to that effect. It was, however, manifestly intended to apply to valid trade-marks used in commerce between continental United States and the Philippine Islands. This is apparent from § 29[6] which provides that the word 'States', as used in the Act 'embraces the District of Columbia, the Territories of the United States, and such other territory as shall be under the jurisdiction and control of the United States.'[7] The Tariff Act of 1909,[8] relating to the Philippine Islands, provided for jurisdiction in the insular courts in matters arising under the Federal Trade-Mark Act of 1905. And the Philippine statute as to trade-marks, as amended in 1915 (Act No. 2460) in prohibiting the importation of merchandise with names or marks simulating those of domestic manufacturers or traders registered under the local Act, contained a proviso that "this section" (§ 14) "shall not be construed to affect rights that any person may have acquired by virtue of having registered a trade-mark under the laws of the United States."[9]

Accordingly, we must assume that it was the intention of the Congress in the Federal Trade-Mark Act of 1905 to provide, with respect to trade-marks used in commerce between continental United States and the Philippine Islands, a protection similar to that which was accorded

[5] Act of February 20, 1905, c. 592, 33 Stat. 724, U. S. C., Tit. 15, §§ 81 et seq.

[6] 33 Stat. 731, U. S. C. Tit. 15, § 108.

[7] See U. S. Treasury Department, Rules and Regulations, 1908, vol. 3, art. 325, p. 159; 27 Op. Atty. Gen. 623, 624.

[8] Act of August 5, 1909, c. 8, § 26, 36 Stat. 130, 177.

[9] See, also, Customs Administrative Order No. 194, January 13, 1926: "Laws, Rules and Regulations governing the registration of Trade-Marks and Trade Names in the Philippine Islands" published by the Philippine Government in 1927.

by the Act to the use of trade-marks in interstate commerce. As to the latter, the Federal statute did not attempt to create exclusive substantive rights in marks, or to afford a refuge for piracy through registration under the Act, but to provide appropriate procedure and to give the described protection and remedies where property rights existed. The acquisition of such property rights in trade-marks rested upon the laws of the several States. *United Drug Co.* v. *Rectanus Co.*, 248 U. S. 90, 98; *American Steel Foundries* v. *Robertson*, 269 U. S. 372, 381; *United States Printing & Lithograph Co.*, v. *Griggs, Cooper & Co.*, 279 U. S. 156, 158. And in view of the object and terms of the statute, and of the assimilation in this respect of commerce with the Philippines to interstate commerce, the same rule of construction must be deemed applicable in both cases. There is no ground for the conclusion that the Congress, in thus according the protection of the Federal statute to valid registered trade-marks used in commerce with the Philippine Islands, intended to override the Philippine statute with respect to the acquisition and protection of rights in marks and names in local trade within the Islands. The Philippine Trade-Mark Act in its proper application to local trade is undoubtedly one of the laws which was continued in force by the Organic Act for the Philippine Islands, enacted in 1916,[10] which provided in § 6 " that the laws now in force in the Philippines shall continue in force and effect, except as altered, amended, or modified herein, until altered, amended, or repealed by the legislative authority herein provided or by Act of Congress of the United States."

The controversy with respect to the trade in the wares in question is narrowed by the concession of the respondent, in its argument here, that its bill " did not pray for

[10] Act of August 29, 1916, c. 416, 39 Stat. 545, 547.

an injunction against importation, but against selling—meaning, of course, local selling within the Philippines." Respondent states that "the infringing and unfair acts of petitioners all had to do with local selling after the imported goods had 'mingled with and become a part of the general property of the' Islands." Referring to the provision of the judgment enjoining petitioners from 'importing and selling in the Philippine Islands,' respondent concedes that "if the words 'selling in the Philippines' should be construed as comprehensive enough to include selling by Wm. A. Rogers, Ltd. directly to a purchaser in the Philippines," the judgment might be "open to criticism," and respondent submits that these words mean "local sales." Insisting that the judgment as thus construed "in no way interferes with the importation of goods of petitioners or the sale of their goods in original packages," respondent states that, if the judgment be found ambiguous in this respect, "it would be enough to reform it to confine its operation to 'selling in local trade in the Philippine Islands.'"

*Second.* With respect to the local trade within the Islands, respondent had acquired rights under the Philippine law. Respondent had long been engaged in selling its wares and had a valuable good will. These wares had been known by the name of 'Rogers' for many years. This name had identified the wares and had made the respondent's trade distinctive. In employing this designation there had been no simulation of the names of others in the Islands and there had been no occasion for confusion. For this trade, as the insular Court has said, the Islands were 'virgin' territory. The facts, as found, thus demonstrate that in this long continued local trade the word 'Rogers' did not have the significance of a family name but had acquired a secondary meaning in particular relation to the wares in which the respondent

dealt.[11]  The insular Supreme Court held that in these circumstances the word ' Rogers ' was entitled to registration under the Philippine Trade-Mark Act No. 666. We perceive no ground on which it can be said that legislation permitting such a registration and affording the remedies for which the Act provides was not within the competency of the local legislative authority. Compare, with respect to the provision of § 5 of the Federal Trade Mark Act of 1905, *Thaddeus Davids Co.* v. *Davids Mfg. Co.,* 233 U. S. 461, 468, 470; *G. & C. Merriam Co.* v. *Syndicate Publishing Co.,* 237 U. S. 618, 622. The fact that the goods thus designated were imported goods does not affect the question of the respondent's right to protection in the local trade it had built up.  The fundamental purpose of the Philippine legislation was to protect the continued enjoyment of reputation acquired in such trade and the good will flowing from it.  See *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403, 412, 413. In this aspect it is unnecessary to consider the respective rights of the International Silver Company and Wm. A. Rogers, Ltd. in relation to the use of their marks in the States of the Union.  These rights have been the subject of numerous judicial decisions.[12]

---

[11] See *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.,* 208 U. S. 554, 559; *L. E. Waterman Co.* v. *Modern Pen Co.,* 235 U. S. 88, 94; *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85, 87; 53 N. E. 141; *Westphal* v. *Westphal's Corp.,* 216 App. Div. (N. Y.) 53; 215 N. Y. S. 4; *Id.,* 243 N. Y. 639; 154 N. E. 638; *Garrett* v. *Garrett & Co.,* 78 Fed. 472, 478; *Henderson* v. *Peter Henderson & Co.,* 9 F. (2d) 787, 789; *Vick Medicine Co.* v. *Vick Chemical Co.,* 11 F. (2d) 33, 35; *Montgomery* v. *Thompson* (1891), A. C. 217; 64 L. T. R. 748; *Matter of Burford & Co.,* 36 R. P. C. 139.

[12] *William Rogers Mfg. Co.* v. *Rogers & Spurr Mfg. Co.,* 11 Fed. 495; *William Rogers Mfg. Co.* v. *R. W. Rogers Co.,* 66 Fed. 56; *R. W. Rogers Co.* v. *Wm. Rogers Mfg. Co.,* 70 Fed. 1017; *Rogers* v. *Wm. Rogers Mfg. Co.,* 70 Fed. 1019; *Wm. Rogers Mfg. Co.* v. *Rogers,* 84 Fed. 639; *Wm. Rogers Mfg. Co.* v. *Rogers,* 95 Fed. 1007; *Inter-*

It is sufficient to say that when petitioners entered the trade within the Philippine Islands in 1925, they found a field already occupied and were bound to respect the rights there established. Nor do we find any ground for holding that the respondent is estopped from seeking relief by reason of its relation to the International Silver Company. Respondent manifestly had acquired an interest in the local trade which was entitled to protection, and it has sought and obtained that protection in accordance with the law governing that trade.

As the questions are those of the interpretation of the local law, and its application to particular facts, this Court, while free to exercise its independent judgment, is not disposed except for cogent reasons to overrule the decision of the insular court. *Alzua* v. *Johnson,* 231 U. S. 106, 110; *Gauzon* v. *Compañia General,* 245 U. S. 86, 89; *Ibanez* v. *Hong Kong Banking Corp.,* 246 U. S. 627, 629; *Philippine Sugar Co.* v. *Philippine Islands,* 247 U. S. 385, 390; *Yu Cong Eng* v. *Trinidad,* 271 U. S. 500, 523. We find no such reasons here.

The judgment of the Court of First Instance of Manila is modified, in the provision for injunction, by striking out the words " importing and selling in the Philippine Islands " and substituting therefor the words " selling in local trade in the Philippine Islands," and, in the provision for accounting, by striking out the words " importation and sale in the Philippines " and substituting therefor the words " sale in local trade in the Philippine

---

*national Silver Co.* v. *Simeon L. & George H. Rogers Co.,* 110 Fed. 955; *Wm. A. Rogers, Ltd.* v. *International Silver Co.,* 30 App. D. C. 97; *Wm. A. Rogers, Ltd.* v. *International Silver Co.* (1), 34 App. D. C. 410; *William A. Rogers, Ltd.* v. *International Silver Co.* (2), 34 App. D. C. 413; *Wm. A. Rogers, Ltd.* v. *International Silver Co.* (3), 34 App. D. C. 484; *Wm. A. Rogers, Ltd* v. *Rogers Silverware Redemption Bureau, Inc.,* 247 Fed. 178; *William Rogers Mfg. Co.* v. *Rogers Mfg. Co.,* 16 Phila. Rep. 178.

Islands "; and, with this modification, the judgments of the Supreme Court of the Philippine Islands are affirmed.

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of these cases.