**KIMBERLY CLARK CORP. v. MARZALL.**
**Civ. Nos. 1897, 5175.**

United States District Court
District of Columbia.
Dec. 8, 1950.

Cushman, Darby & Cushman, Washington, D. C., C. Willard Hayes, Max Louis, Washington, D. C., Cyril A. Soans, William E. Anderson, Chicago, Ill., of counsel, for plaintiff.

E. L. Reynolds, Sol., Washington, D. C., for defendant.

KIRKLAND, District Judge.

This case is a consolidation of two separate causes of action filed by the plaintiff, a corporation organized under the laws of the State of Delaware, to authorize the Commissioner of Patents to register plaintiff's trade-mark in due form of law. Civil Action 1897–49 was filed by the plaintiff for registration of his mark under the Act of February 20, 1905, 15 U.S.C.A. §§ 81–134, and Civil Action 5175–49 seeks registration of the plaintiff's mark under

the Act of July 5, 1946, 15 U.S.C.A. §§ 1051–1127. Plaintiff's mark consists of the name Kimberly Clark, written both with and without a hyphen. The parties to the action have stipulated that the presence or absence of a hyphen would have no material bearing upon the issue.

The Commissioner of Patents refused to register this mark under the Act of 1905 on the prohibition of the second proviso of Section 5, which prohibits the registration of a "mark which consists merely in the name of an individual, firm, corporation, or association, not written, printed * * in some particular or distinctive manner * * *".

The Commissioner denied the petition under the Act of 1946 under the prohibition of Section 2, subsection (e) (3), which prohibits registration of a mark which is primarily merely a surname. Plaintiff admits that his mark consists merely in the combination of the two names, and that they have not been written, printed, impressed or woven in some particular or distinctive manner or in association with any other word or device. It seems clear that the name Kimberly Clark thus falls within the prohibition of Section 5 of the 1905 Act, which prohibits registration of a mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed or woven in some particular or distinctive manner.

As to the Trade-Mark Act of 1946, plaintiff urges that his mark is not primarily merely a surname but consists of the combination of two surnames which have become identified to the trade as a source of certain types and qualities of paper products. Plaintiff introduced evidence which established a secondary meaning in the trade and which also established substantially exclusive and continuous use of this mark by the applicant in commerce for the five years next preceding the date of application. This of course qualifies the plaintiff's mark for registration under Section 2(f) of the Act, which provides: "(f) Except as expressly excluded in subsections (a), (b), (c), and (d) of this sec-

tion, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration."

However, plaintiff has for the purposes of this action refused a registration under Section 2(f) and seeks a registration under Section 2(e) of the Act. The problem then is whether the combination of the two surnames, Kimberly Clark, falls within the prohibition of Section 2(e) (3), which prohibits registration of a mark which is primarily merely a surname. ·

■■ The two basic purposes of trademark registration are to protect the consumer from misrepresentation as to the source of a product and on the other hand to protect the owner of the mark in the reputation and good will which have grown up with its use. It is not entirely clear from the wording of Section 2(e) (3) that Congress meant to exclude only a mark which consists of one surname or whether it intended this prohibition to extend to two surnames used in combination. The interpretation of a statute when the meaning is not clear should be determined by the spirit of the statute as a whole as well as the intent of Congress as evidenced by the legislative history. "Inasmuch as the Court cannot escape the consequence that its determination will affect the meaning of the statute, it would appear to be a more appropriate exercise of the judicial function if the Court would face the difficult task, and at the risk of being wrong, determine as best it can what the legislature intended. If the Court decides incorrectly, the legislature may at succeeding sessions correct the error. If it decides correctly, it will have saved the expense and burden of the legislative process and will have given judicial relief to those who were in the beginning entitled

to it." Sutherland, Statutory Construction, 3 Ed. Horack, Sec. 4503.

In Senate Report No. 1333, May 14, 1946, the following statement is found: "There is no essential difference between trademark infringement and what is loosely called unfair competition. Unfair competition is the genus of which trade-mark infringement is one of the species; 'the law of trade-marks is but a part of the broader law of unfair competition'. (United Drug Co. v. [Theodore] Rectanus [Co.], 248 U.S.. 90, 97 [39 S.Ct. 48, 63 L. Ed. 141]). * * * This bill attempts to accomplish these various things: * * 3. To modernize the trade-mark statutes so that they will conform to legitimate present day practice."

■ The spirit and the intent of the entire Act indicate that Congress intended to codify the law of unfair competition in regard to the use of personal names as it has been developed by the courts. The development of this law in regard to the acquisition of rights in a person's name is shown by the collection of cases in Oppenheim, Cases and Materials on Unfair Trade Practices, 1950, pp. 165–167, 202–221. At common law it was held that every man had an absolute right to use his own name. "A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property"; Brown Chemical Company v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 627, 35 L.Ed. 247; Wm. A. Rogers, Ltd. v. International Silver Co., 30 App.D.C. 97; Thaddeus Davids Co. v. Davids, 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046; provided that in such use of his own name he perpetrates no false representations. The latest cases on the use of an individual name also recognize the duty of the newcomer to distinguish the use of his name so as to prevent confusion and misrepresentation. See Oppenheim, supra.

■ The words "primarily merely" are the controlling words of Section 2(e) (3), and must be interpreted in a manner consistent with the development of case law on unfair competition. These words in-

dicate that Congress intended to exclude marks the dominant characteristic of which was to be found in a surname. For if the dominant characteristic of the mark was something other than a surname itself, the user's right to exclusive use has been well established by the cases on secondary meaning and was recognized by Congress as early as the 1905 Act in the section, which permitted registration of a name which was written in a distinctive manner. The printed reports of the extensive hearings which were held on this bill reveal nothing specific in regard to the application of Section 2(e) (3) to the facts of this particular case.[1]

Plaintiff has cited to the Court several cases in which the Commissioner of Patents has registered marks consisting of a combination of two words, which words appear in various telephone directories as surnames. Plaintiff cites the following registrations:

| | | |
|---|---|---|
| Fort-Pitt | Reg. No. 518,307 | December 6, 1949 |
| Brier Rose | Reg. No. 518,402 | December 6, 1949 |
| Rich-Field | Reg. No. 518,478 | December 6, 1949 |
| Queen Ellesson | Reg. No. 518,675 | December 13, 1949 |
| King Ellesson | Reg. No. 518,676 | December 13, 1949 |
| Winter Wonder | Reg. No. 518,756 | December 13, 1949 |
| Pearltone | Reg. No. 518,941 | December 20, 1949 |
| Mount Vernon | Reg. No. 519,002 | December 20, 1949 |
| Wonderball | Reg. No. 519,089 | December 20, 1949 |
| Andre Dallioux | Reg. No. 528,971 | August 15, 1950 |

It is clear that although these names might be in use as surnames, in effect the dominant characteristic of these names is something other than a mere surname.

▮ It is true that the name Andre Dallioux consists of a baptismal or given name in combination with a surname. In the 1905 Act names of individuals were prohibited, while in the 1946 Act the word was changed from "individual" to "surname". A strict reading of Section 2(e) (3) would indicate that Congress did not expressly exclude the name of an individual, provided the dominant characteristic of the mark was not the surname.

It is also clear that the mark Kimberly Clark has no other characteristic but that of a surname, although its secondary meaning as a source has been clearly established. As was stated in Estate of P. D. Beckwith, Inc., v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 417, 64 L.Ed. 705, "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety". To sustain the burden of proof in this action, in view of the finding of the Patent Examiner, it is necessary for the plaintiff to show that his mark is not primarily merely a surname when considered as a whole.

Section 45 of the 1946 Act provides that "unless the contrary is plainly apparent from the context * * * Words used in the singular include the plural". It is not plainly apparent that Congress meant to exclude a mark consisting of one surname any more than a mark consisting of two surnames, provided the dominant characteristic of the mark is in the use of the surname or surnames. To state merely that two surnames used together as a mark, for example, "Jones-Smith" is not registrable, while the name "Jones Smith", in which "Jones" is a baptismal name and "Smith" is a surname, would be registrable under Section 2(e), would create an anomaly certainly not intended by the framers of the Act. However, if the name "Jones Smith" in either form became known in the market place as a source of supply of a particular item, then the user of the mark would have an interest in the mark which would be protected by the courts if a newcomer adopted the same mark even though it also be the latter's own name. This situation is covered expressly by Section 2(f) of the Act, the secondary meaning provision.

▮ Registration of a name as a mark without more under 2(e) would require a

---

1. At the instance of the Honorable Luther A. Johnson, Chauncey P. Carter, Esq., as an expert in the field, prepared a Digest of Proposed Changes in Federal Trade-Mark Law. His comment on Section 2(e) (3) was that: " * * * 4. A mark will not be denied registration * * * (c) as a personal name unless it is primarily a surname." Vol. 84, Part 14, Congressional Record Appendix, p. 3795.

finding based upon a showing that the dominant characteristic of the name is not primarily merely the surname or surnames, whether the mark consists of two or more surnames or a baptismal name and a surname. This is so because every person has the right to use his own name in his own business. However, if a secondary meaning has been established for a mark, even though the dominant characteristic of the mark be a surname, then the user is entitled to protection in the use of the mark. This construction appears to be the only construction consistent with the third purpose of the Act: "To modernize the trade-mark statutes so that they will conform to legitimate present-day business practices".

This Court finds that the name "Kimberly Clark" is composed of two surnames, the dominant, and in fact only characteristic of which is the surnames. For this reason, plaintiff is prohibited from registering the mark under Section 2(e) (3) of the Act of July 5, 1946. Plaintiff has established a secondary meaning in the use of his mark as well as more than five years' exclusive use, which will prima facie entitle him to registration of the mark under Section 2(f). However, in view of plaintiff's prior declination and failure to amend the present complaint, this complaint is accordingly dismissed.